BILLY J. WILLIAMS, OSB 901366
United States Attorney
District of Oregon
**GARY Y. SUSSMAN, OSB 873568**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:20-mj-00185 |
| v. | SUPPLEMENTAL INFORMATION ON THE ISSUE OF PRETRIAL DETENTION |
| ISAIAH JASON MAZA, Jr., | |
| **Defendant.** | |

At defendant's initial appearance on August 3, 2020, the Court requested that the government provide additional information about defendant's June 2, 2020, arrest in Multnomah County for First Degree Criminal Mischief.  Following that hearing, the also Court requested that the government provide additional details concerning the circumstances surrounding defendant's arrest by U.S. Marshals on July 31, 2020.  This memorandum will provide the information the Court requested.

A.   *Defendant's Arrest on June 2, 2020*.[1]

Shortly after 3:00 am on June 2, 2020, defendant and three other young adults were walking near the Worldmark Portland Waterfront Hotel on SW Naito Parkway after leaving a downtown

---

[1] The facts in this section are drawn from the Portland Police Bureau reports of the incident, and information provided by the Multnomah County District Attorney's Office.

**Supplemental Information on the Issue of Pretrial Detention**                                   Page 1

protest.  As they approached the hotel, defendant told one of his companions, "I want to break some shit," picked up what an officer described as a "baseball size piece of concrete," and threw it at a hotel window.  When the window did not shatter, defendant picked it up and hurled it at the window again, shattering the glass.  One of defendant's companions reported hearing defendant laughing and yelling loudly after he broke the window.  Defendant and his companions left, walking northbound on Naito Parkway.

A hotel employee called the police immediately, and provided security camera footage to responding officers.  Officers located defendant and his companions a short distance away.  They identified defendant from the surveillance video.  Defendant falsely claimed he did nothing wrong, and said he had no idea why he was being arrested.  When the officer told defendant he was captured on surveillance video throwing rocks at the hotel window, defendant acted confused and said he had no idea what the officer was talking about.  His three companions, on the other hand, all separately told officers that defendant had broken the window.

Defendant was charged with first degree criminal mischief, and was lodged at the Multnomah County Detention Center.  According to Pretrial Services, defendant was released on his own recognizance.  He committed the instant federal offenses while on pretrial release in the Multnomah County case.

According to the Multnomah County District Attorney's Office, a state grand jury recently returned an indictment in case number 20-CR-30256 charging defendant with first degree criminal mischief, a felony.  He is scheduled to appear for an arraignment on that indictment on August 5, 2020.

At defendant's initial appearance, this Court wondered whether defendant's conduct in the instant case was an escalation of his conduct in the Multnomah County case.  It very clearly is – to

an extreme degree.  On June 2, defendant threw a chunk of concrete through a hotel window for no reason whatsoever, other than because he wanted to "break some shit."  On July 22, while on pretrial release from the Multnomah County case, he engaged in repeated attacks against the Hatfield Courthouse and the law enforcement officers inside of it.  Only those attacks were no random acts.  They were deliberate, calculated, vicious, and repeated.

Defendant actively participated in pulling the protective plywood covering off of the front of the courthouse, exposing its floor-to-ceiling windows.  As depicted in the video the Court viewed at defendant's initial appearance, defendant repeatedly kicked at the exposed glass with his leg, tried to smash it repeatedly with a rectangular metal object that appeared to be a section of fence frame, and pounded on it over and over with a hammer-like tool.

Eventually, he and others managed to pull away a large section of the protective plywood covering, exposing the plate glass windows beneath it.  Another person breached one of the windows with a long piece of 2" x 4" lumber.  Shortly thereafter, defendant walked over to the damaged window, lit the fuse of a very large pyrotechnic (that he described as being the size of his hand), and tossed it through the broken window and into the courthouse lobby (Photos 1 and 2, below).  Defendant took a few steps back and aimed his cellular telephone at the broken window, apparently waiting for the detonation.  He then walked back up to the damaged window and kicked a large hole in the glass with his foot.


Photo 1


Photo 2

**Supplemental Information on the Issue of Pretrial Detention**            **Page 4**

Deputy U.S. Marshals who were in the lobby came out of the courthouse through the broken window. They had to – protestors had barricaded the lobby entrance doors, which open outward. As they were doing so, the device defendant tossed into the lobby detonated.

The first explosion was a small one. But about a second later, the main charge detonated just as a deputy marshal was about to step through the shattered window (Photos 3 and 4). The deputy reported seeing a blinding flash of light and feeling the pressure wave of the explosion. He can be seen staggering and leaning up against the wall of the courthouse immediately after the blast (Photo 5). The deputy suffered injuries to both of his legs from the blast.


Photo 3

**Supplemental Information on the Issue of Pretrial Detention**  **Page 5**


Photo 4


Photo 5

**Supplemental Information on the Issue of Pretrial Detention**                     **Page 6**

Throughout this episode, defendant is directly involved, and appears to be very animated and excited. In a livestream of the incident broadcast by another person at the protest, defendant can be seen throwing an object (possibly a water bottle) at a deputy marshal who is standing on the sidewalk outside of the courthouse.

Defendant's conduct, as documented on the surveillance camera footage, is violent, malicious, and very, very dangerous. Calling it an "escalation" of his criminal conduct on June 2 is an understatement.

### B.     *Defendant's Arrest on July 31, 2020.*

Although defendant was clearly depicted in both the courthouse surveillance camera footage and in publicly available livestreamed video, authorities had not identified him. On July 31, a Deputy U.S. Marshal who was driving to work at the courthouse and who had watched the surveillance footage and the livestreamed videos repeatedly, spotted defendant on SW Third Avenue just south of SW Main, across from the Portland Police Bureau's Central Precinct. Defendant was milling about with two women who were sitting on the curb, just south of the Starbucks coffee shop. The deputy immediately recognized defendant from the surveillance and livestream videos.

A number of deputies got into two unmarked SUV's that were equipped with red and blue lights and approached defendant. One car stopped to the south of his position; the other to the north. The deputies were in plain clothes, but wore tactical vests that clearly identified them as Deputy U.S. Marshals. As the deputies got out of their cars and approached defendant, he ran north on SW Third, then east on Main, then north on SW Second.

Deputies pursued him on foot and in at least one vehicle. They caught and took him into custody near an escalator at the World Trade Center. They brought him back to their detention facility in the courthouse.

Special agents from the FBI and the Bureau of Alcohol, Tobacco, Firearms, and Explosives interviewed defendant following his arrest. The agents advised him of his *Miranda* rights. Defendant stated he understood his rights and agreed to talk to them.

He told them conflicting stories. At first, he denied ever attending a downtown protest. He later said he had attended a few. When they showed him the courthouse surveillance video, he acknowledged it depicted him, but claimed he could not remember anything about that night. After watching the device detonate on the video, he admitted placing it inside the courthouse lobby.

Defendant knew there were law enforcement agents in the courthouse, but claimed he did not see any near the broken window. He described the device as being the size of his hand, but thought that it was a "groundbloom" that would just spin around when it detonated. He admitted knowing that even a "groundbloom" would cause damage to the courthouse. He claimed that someone had given him the device.[2]

### C.   Additional Information.

Defense counsel has provided additional information in the form of an investigator's interview with defendant's mother, letters written by his former counselor and a teacher at the alternative high school he attends, and a letter to the Court from defendant's sister. None of those materials change the equation.

---

[2] Defendant can be seen in the video footage showing the device to others present outside of the courthouse before he lit it and dropped it in through the broken window.

Defendant's mother notes that after defendant's counseling sessions ended, he was invited to a party with a group of kids she did not know, and things "went downhill from there." Defendant started acting differently and having "episodes where he would get so upset he would black out." She suspects he has been using drugs and/or alcohol, but he has been reluctant to talk to her about it. And of course, defendant was living with her when he committed both the state offense and the instant federal offenses.

The letters from defendant's former counselor and the teacher at his alternative high school both predate the crimes in this case, and appear to be aimed at helping defendant secure visitation with his daughter.

The letter from his sister is heartfelt and loving, but she is misinformed. She writes that defendant "would never ever ever hurt anyone ever," and says he is a "kind loving teddy bear that just has a lot of pain and severe ptsd [sic]." In fact, defendant *did* hurt someone. And the conduct depicted in the security camera video footage is anything but kind and loving. He helped to rip the wooden covering off the courthouse windows, and did his level best to shatter the glass using his feet, a metal frame, and a hammer-like tool. And once someone else breached a section of the window with a long piece of 2" x 4" lumber, defendant lit the fuse of a very large pyrotechnic and dropped it inside the lobby of the courthouse, despite knowing that federal law enforcement officers were inside. Then, he pulled out his cellphone to record the detonation, and kicked out a large section of the damaged glass with his foot. Those are not the actions of a "kind loving teddy bear."

Perhaps a better indication of defendant's character can be found in a video clip he posted publicly to his Instragram account. In the video, posted only a week ago (i.e., *after* his conduct at the courthouse, but before his arrest), defendant is seen handling a semi-automatic firearm with a silver slide while music plays in the background. He caresses his face with the firearm, then points

the barrel directly at the camera. He has his hair in a bun on top of his head, just as he is shown in the courthouse surveillance video footage. A girl who appears in the video next to him smiles approvingly at his conduct. Text that appears next to the video frame reads, "Cold w the heat not hesitance to let it blow!(.)."[3] The video can be viewed at

https://www.instagram.com/p/CDI5AGCnMic/?igshid=c00pbsomchwv.

### D. Conclusion.

Defendant has engaged in a troubling pattern of behavior that became increasingly violent and dangerous. He committed the instant federal offenses while on pretrial release in Multnomah County. His prior arrest did nothing to deter him; indeed, his criminal conduct escalated in both seriousness and danger. A Deputy United States Marshal was injured as a result. Defendant's proposed release plan puts him right back in the same residence he was in when he committed both the state and federal offenses. His family was not able to supervise him then; nothing suggests they will have any more success now. And due to the COVID-19 pandemic, the level of supervision Pretrial Services can provide is minimal. Defendant has demonstrated through his egregious conduct that he poses a very serious danger to the community. He should remain in custody pending trial.

DATED: August 3, 2020.                             Respectfully submitted,

                                                   BILLY J. WILLIAMS
                                                   United States Attorney

                                                   */s/ Gary Y. Sussman*
                                                   GARY Y. SUSSMAN, OSB 873568
                                                   Assistant United States Attorney

---

[3] That text was posted by defendant, whose profile photo appears right next to the text.